**Appeal Nos. 23-1078, 23-1081**

# United States Court of Appeals
# For The Federal Circuit

——◆◆◆——

ALL ONE GOD FAITH, INC., dba Dr. Bronner's Magic Soaps,

*Plaintiff,*

GLOB ENERGY CORP., ASCENSION CHEMICALS LLC,
UMD SOLUTIONS LLC, CRUDE CHEM TECHNOLOGY LLC,

*Plaintiffs-Appellants,*

—v.—

UNITED STATES, CP KELCO U.S., INC.,

*Defendants-Appellees.*

———————————

Appeal from the United States Court of International Trade in
Court Nos. 20-00160, 20-00161, 20-00162, 20-00163, 20-00164,
Judge Gary S. Katzmann

## BRIEF FOR DEFENDANT-APPELLEE, UNITED STATES

BRIAN M. BOYNTON
Principal Deputy Assistant
Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

ELISA S. SOLOMON
Trial Atorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
Tel. No. (212) 264-0583

*Attorneys for Defendant-Appellee*

*Of Counsel:*

SHAE WEATHERSBEE
Office of Chief Counsel
U.S. Customs and Border Protection

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Rules 28(a)(4) and 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for defendant-appellee, the United States, identifies the following appeal that is currently pending before this Court and that may be affected by the Court's decision in this case: *Royal Brush Manufacturing, Inc. v. United States*, Federal Circuit Appeal No. 22-1226.

Defendant-Appellee's counsel further states that she is unaware of any other appeal in or from this action that previously was before this Court or any other appellate court under the same or similar title.

## **TABLE OF CONTENTS**

STATEMENT OF THE ISSUES .................................................................... 1

STATEMENT OF THE CASE .................................................................... 2

STATEMENT OF THE FACTS .................................................................. 4

I.   The Enforce and Protect Act ............................................................ 4

II.  Administrative Proceedings ............................................................ 7

   A. CBP's EAPA Investigation ........................................................ 7

   B. Administrative Review Of The Evasion Determination ............................ 12

   C. Plaintiffs-Appellants Challenge CBP's Evasion Determinations At The
   Court Of International Trade ......................................................... 14

   D. CBP's Liquidation of Entries And Related Challenges ........................... 15

III. Trial Court's Determination .......................................................... 16

   A. The Trial Court's Conclusion That It Lacked Jurisdiction Over Liquidated
   Entries ............................................................................. 17

   B. The Trial Court's Holding Sustaining CBP's Determinations Of Evasion 19

SUMMARY OF THE ARGUMENT .................................................................. 21

STANDARD OF REVIEW ...................................................................... 22

I.   Standard Of Review Concerning Subject Matter Jurisdiction ....................... 22

II.  Standard Of Review For EAPA Determinations ..................................... 23

ARGUMENT ................................................................................ 23

I.   The Trial Court's Dismissal Of GLōB's Claims Should Be Affirmed .......... 23

   A. Liquidation of GLōB's Entries Has Become Final And Consequently No
   Relief Can Be Awarded For GLōB's Claims ........................................ 23

B.  Plaintiffs-Appellants' Jurisdictional Arguments Lack Merit......................30

II.  The Trial Court's Judgment On The Merits Should Be Affirmed Because CBP Did Not Abuse Its Discretion And Acted In Accordance With Law In Making Its Evasion Determinations ....................................................................40

A.  The Trial Court Correctly Sustained CBP's Determination That The Entries Contained "Covered Merchandise".......................................................41

B.  The Trial Court Correctly Sustained CBP's Determination That The Importers Had Avoided Applicable Antidumping Duties................................46

CONCLUSION .....................................................................................................56

# TABLE OF AUTHORITIES

**Cases**

*Acquisition 362, LLC v. United States*,
    517 F. Supp. 3d 1318 (Ct. Int'l Trade 2021) ..................................................... 31

*American Signature, Inc. v. United States*,
    598 F.3d 816 (Fed. Cir. 2010) ......................................................... 32, 33, 35, 36

*Arbaugh v. Y & H Corp.*,
    546 U.S. 500 (2006) ...................................................................................... 22

*Arp Materials, Inc. v. United States*,
    47 F.4th 1370 (Fed. Cir. 2022) ................................................................. 27, 28

*Atar S.r.L. v. United States*,
    730 F.3d 1320 (Fed. Cir. 2013) ..................................................................... 23

*Carbon Activated Corp. v. United States*,
    791 F.3d 1312 (Fed. Cir. 2015) ..................................................................... 31

*Dep't of Com. v. New York*,
    139 S. Ct. 2551, 204 L.Ed.2d 978 (2019) ........................................................... 55

*Int'l Custom Prods., Inc. v. United States*,
    467 F.3d 1324 (Fed. Cir. 2006) ..................................................................... 27

*JCM Ltd. v. United States*,
    210 F.3d 1357 (Fed. Cir. 2000) ..................................................................... 23

*Juancheng Kangtai Chemical Co. Ltd. v. United States*,
    932 F.3d 1321 (Fed. Cir. 2019) ..................................................................... 30

*Koyo Corp. v. United States*,
    497 F.3d 1231 (Fed. Cir. 2007) ..................................................................... 24

*McNutt v. Gen. Motors Acceptance Corp.*,
    298 U.S. 178 (1936) ...................................................................................... 22

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983)................................................................................. 55

*Mukand Int'l Ltd. v. United States*,
   502 F.3d 1366 (Fed. Cir. 2007) ......................................................... 35

*Nippon Steel Corp. v. United States*,
   337 F.3d 1373 (Fed. Cir. 2003) ............................................... 52, 53, 54

*Qingdao Taifa Grp. Co. v. United States*,
   581 F.3d 1375 (Fed. Cir. 2009) ......................................................... 39

*Royal Brush Manufacturing v. United States*,
   No. 19-0019 Ct. Int'l Trade (2019), *on appeal,* Federal Circuit No. 22-1226... 26

*Shinyei Corp. of Am. v. United States*,
   355 F.3d 1297 (Fed. Cir. 2004) .....................................................32-36

*Steel Co. v. Citizens For A Better Env't*,
   523 U.S. 83 (1998)................................................................................. 22

*Sunpreme, Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020) ......................................................... 32

*United States v. Am. Home Assur. Co.*,
   789 F.3d 1313 (Fed. Cir. 2015) ................................................... 18, 30

*United States v. Cherry Hill Textiles, Inc.*,
   112 F.3d 1550 (Fed. Cir. 1997) ......................................................... 31

*Wanxiang Am. Corp. v. United States*,
   12 F.4th 1369 (Fed. Cir. 2021) ......................................................... 23

*Zenith Radio Corp. v. United States*,
   710 F.2d 806 (Fed. Cir. 1983) ..................................... 29, 30, 37, 38

*Zhejiang DunAn Hetian Metal Co. v. United States*,
   652 F.3d 1333 (Fed. Cir. 2011) ......................................................... 54

**Statutes**

19 U.S.C. § 1484 ................................................................... 51

19 U.S.C. § 1500(c) ............................................................. 23

19 U.S.C. § 1501 ................................................................... 30

19 U.S.C. § 1508(a) ............................................................. 51

19 U.S.C. § 1509(a) ............................................................. 51

19 U.S.C. § 1509(g) ............................................................. 51

19 U.S.C. § 1514 ........................................................... *passim*

19 U.S.C. § 1516a ....................................................... 29, 39

19 U.S.C. § 1517 ........................................................... *passim*

19 U.S.C. § 1517(a)(3) .................................................. 6, 43, 45

19 U.S.C. § 1517(a)(5) ............................................... 6, 13, 409

19 U.S.C. § 1517(b) ................................... 5, 19, 41, 42, 43, 45

19 U.S.C. § 1517(c) ................................... 4, 22, 46, 52, 53

19 U.S.C. § 1517(c)(1) ............................................... 6, 51

19 U.S.C. § 1517(c)(2) ....................................... 5, 21, 46, 50

19 U.S.C. § 1517(c)(3) ....................................... 5, 21, 47, 49, 52

19 U.S.C. § 1517(d)(1)(A)(i) ................................... 17, 18

19 U.S.C. § 1517(e) ....................................... 5, 8, 17, 25, 38

19 U.S.C. § 1517(f) ............................................... 6, 12, 23

19 U.S.C. § 1517(g) ............................................................... 7, 14, 17, 23

19 U.S.C. § 1675 ...................................................................... 34, 43, 45

19 U.S.C. § 1677(9)(A) ................................................................... 44

19 U.S.C. § 1677e .......................................................................... 53, 54

28 U.S.C. § 1581(a) ..................................................................... *passim*

28 U.S.C. § 1581(c) ..................................................................... *passim*

28 U.S.C. § 1581(i) ........................................................... 33, 34, 35, 36

28 U.S.C. § 2636(a)(1) ...................................................... 24, 25, 26

Pub. L. No. 114-125 ............................................................................4

## Regulations

19 C.F.R. 351.212(b)(2) ........................................................... 39

19 C.F.R. Part 165 .................................................................... 4

19 C.F.R. § 159.1 ...................................................................... 24

19 C.F.R. § 165.22 ................................................................... 6, 13

19 C.F.R. § 165.28(a) .............................................................. 37, 38

## Other Authorities

H.R. Rep. No. 114-114, at 85 (2015) ...................................... 4

*Xanthan Gum from the People's Republic of China: Amended Final
   Determinationof Sales at Less Than Fair Value and Antidumping Duty Order*,
   78 Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013) .................................... 7

## **STATEMENT OF THE ISSUES**

1.      Whether the trial court properly dismissed the complaint by GLōB

Energy Corporation (GLōB) challenging a determination by U.S. Customs and

Border Protection (CBP or Customs) pursuant to the Enforce and Protect Act

(EAPA) because GLōB's entries has liquidated and GLōB failed to complete the

necessary steps for seeking review of those liquidations in the trial court, and the

finality of those liquidations prevents the trial court from effectuating relief for

GLōB's EAPA claims.

2.      Whether the trial court lawfully concluded that CBP acted in

accordance with law and did not abuse its discretion in determining that the

merchandise at issue was covered by the antidumping duty order on xanthan gum

from People's Republic of China (PRC or China), rather than referring a question

to U.S. Department of Commerce (Commerce), when it is uncontested that the

merchandise was covered by the antidumping order at the time of entry and was

produced in China, notwithstanding that entry documents filed with CBP identified

India as the country of origin.

3.      Whether the trial court lawfully concluded that CBP acted in

accordance with law and did not abuse its discretion in applying adverse inferences

based on available record information when the manufacturer identified by the

importers informed CBP that it did not manufacture the merchandise and the

record did not contain other information confirming who manufactured the

merchandise.

## **STATEMENT OF THE CASE**

This litigation arises from CBP's determination pursuant to the Enforce and

Protect Act (EAPA), 19 U.S.C. § 1517, that there is substantial evidence that

merchandise covered by the antidumping duty order on xanthan gum from China

entered the customs territory of the United States through evasion.  After an

investigation, CBP determined that the importers participating in this appeal,

GLōB Energy Corporation (GLōB), Ascension Chemicals LLC (Ascension), UMD

Solutions LLC (UMD), Crude Chem Technology LLC (Crude or CCT)[1] (hereafter,

the "Plaintiffs-Appellants"), and several other importers,[2] had imported Chinese-

origin xanthan gum into the United States by transshipment through India.

APPX00183-00184.  CBP issued two relevant determinations: (1) Notice of Final

---

[1] The trial court abbreviated Crude Chem Technology LLC as "Crude" whereas
CBP used the CCT abbreviation in its administrative proceedings and then "Crude
Chem" in its administrative review.

[2] CBP made affirmative evasion determinations concerning seven importers,
including the four appellants in this litigation and an additional importer, All One
God Faith Inc. d/b/a Dr. Bronner's Magic Soaps, who challenged CBP's evasion
determinations at the trial court but did not file an appeal to this Court.  *See*
APPX00183-00184; Federal Circuit No. 2023-1078 Notice of Docketing (ECF No.
1-1) (listing Ascension, UMD, and Crude); Federal Circuit No. 2023-1081 Notice
of Docketing (ECF No. 1-1) (listing GLōB).  Two other importers did not appeal
CBP's determination to the trial court.

Determination as to Evasion, EAPA Case No. 7281 (March 9, 2020)
(APPX00183-00202); and (2) Decision on Request for Administrative Review,
EAPA Case No. 7281 (July 16, 2020) (APPX00263-00281).

Plaintiffs-Appellants filed an action in the Court of International Trade
challenging CBP's evasion determinations.  The trial court properly dismissed
GLōB's complaint for lack of jurisdiction because GLōB's entries covered by the
investigation had been liquidated by CBP and GLōB did not perfect an appeal of
that liquidation at the trial court.  The trial court also entered a judgment sustaining
CBP's evasion determinations, concluding that CBP acted in accordance with law
and did not abuse its discretion in making its EAPA determinations.

Plaintiffs-Appellants appeal the trial court's decision, contending that the
trial court erred in (1) dismissing GLōB's complaint; (2) finding that CBP did not
abuse its discretion by declining to refer a question to Commerce as to whether the
imported merchandise was "covered merchandise" under the antidumping order on
xanthan gum from China; and (3) determining that CBP had not abused its
discretion by applying adverse inferences concerning the production of the xanthan
gum at issue.  As described below, the trial court committed no error in concluding
that it lacked jurisdiction over GLōB's entries or in concluding that CBP acted in
accordance with law and did not abuse its discretion in reaching its EAPA
determinations.  Accordingly, we respectfully request that the Court affirm the trial

court's opinion and judgment.

## STATEMENT OF THE FACTS

### I.    The Enforce and Protect Act

In 2016, the President signed into law the Trade Facilitation and Trade

Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).

Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect

Act" or "EAPA" and codified at 19 U.S.C. § 1517, established a CBP

administrative procedure for investigating allegations of evasion of antidumping

and countervailing duty orders as part of Congress's efforts to ensure a level

playing field for U.S. industry. *See* H.R. Rep. No. 114-114, at 85 (2015). Under

EAPA, interested parties may submit allegations to CBP that merchandise covered

by an antidumping or countervailing duty order has been entered into the United

States through evasion. If the allegations reasonably suggest that evasion is

occurring, the statute mandates a formal investigation process and imposes a

timeline for the investigation. 19 U.S.C. §§ 1517(b)-(c), (e). CBP's regulations

establish additional deadlines and procedures governing the investigation. *See*

19 C.F.R. Part 165.

Pursuant to EAPA, within 15 business days of receiving an allegation, CBP

"shall initiate an investigation" if it determines that the allegation or referral

"reasonably suggests that covered merchandise has been entered into the customs

territory of the United States through evasion." 19 U.S.C. § 1517(b)(1). If CBP is

"unable to determine whether the merchandise at issue is covered merchandise[,]"

it can refer a question to Commerce "to determine whether the merchandise is

covered merchandise[.]" 19 U.S.C. § 1517(b)(4).

Within 90 days of initiating an investigation, CBP must determine whether a

"reasonable suspicion" of evasion exists and, if so, shall implement interim

measures, including "suspend[ing] the liquidation of each unliquidated entry of

such covered merchandise that entered *on or after the date* of the initiation of the

investigation[,]" "extend[ing] the period for liquidating each unliquidated entry of

such covered merchandise that entered *before the date* of the initiation of the

investigation[,]" and "tak[ing] such additional measures as the Commissioner

determines necessary to protect the revenue of the United States." 19 U.S.C.

§ 1517(e) (emphasis added).

The EAPA statute grants CBP broad discretion to determine the scope and

means of the investigation, including the authority to collect and verify any

information it deems necessary to make its determination. 19 U.S.C. § 1517(c)(2).

When the party making the allegation, importer, or producer/exporter of the

covered merchandise, "fail[s] to cooperate by not acting to the best of the party or

person's ability to comply with a request for information," CBP may "use an

inference that is adverse to the interests of" that party when "selecting from among

the facts otherwise available to make the determination."  19 U.S.C.

§ 1517(c)(3)(A).

No later than 300 calendar days after the initiation of the investigation, CBP is required to "make a determination, based on substantial evidence, with respect to whether such covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A); *see also* 19 U.S.C. § 1517(c)(1)(B) and 19 C.F.R. § 165.22 (concerning extensions of this time).  The term "evasion" is defined in 19 U.S.C. § 1517(a)(5)(A), which provides, in relevant part:

> [T]he term "evasion" refers to entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

*Id.*  Additionally, the term "covered merchandise" is defined as "merchandise that is subject to—(A) an antidumping duty order. . . ; or (B) a countervailing duty order . . . ."  19 U.S.C. § 1517(a)(3).

Interested parties are permitted to request an administrative review of an initial determination, and CBP must complete the administrative review and issue its decision no later than 60 business days after such a review request.  19 U.S.C.

§ 1517(f).  Judicial review of CBP's evasion determination and CBP's administrative review decision is available at the Court of International Trade.  19 U.S.C. § 1517(g).  The trial court reviews these decisions under 28 U.S.C. § 1581(c) of its jurisdictional statute.

## II.    Administrative Proceedings

### A. CBP's EAPA Investigation

In December 2018 and March 2019, CP Kelco U.S. (CP Kelco), a domestic producer of xanthan gum, submitted letters to CBP alleging that xanthan gum from China that is subject to the antidumping duty order on xanthan gum from China, Order No. A-570-985 (the "AD Order"), was being transshipped though India to evade antidumping duties.  *See* APPX00314-00318 (Ascension December 2018 allegation); APPX00343-00348 (Crude March 2019 allegation); APPX00353-00358 (GLōB March 2019 allegation); APPX00363-00368 (Ascension March 2019 allegation); APPX00373-00378 (UMD March 2019 allegation); *see also Xanthan Gum from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 78 Fed. Reg. 43,143 (Dep't of Commerce July 19, 2013) (*AD Order*).  The AD rate applicable to merchandise from Chinese companies that did not receive their own rates, *i.e.*, those that are determined to be part of the China-Wide Entity rate, is 154.07%.  *AD Order*, 78 Fed. Reg. at 43,144.

7

In February 2019, CBP issued requests for information to the importers identified in CP Kelco's allegations, including GLōB, Ascension, UMB, and Crude. *See* APPX00185 n.5. After evaluating the responses to these requests, CBP's Trade Remedy Law Enforcement Directorate (TRLED) in the Office of Trade initiated separate investigations of each importer on May 7, 2019. *See* APPX00185; *see also* APPX00035-00037 (Crude); APPX00039-00041 (GLōB); APPX00043-00045 (UMD), APPX00047-00048 (Ascension). On August 12, 2019, CBP notified the importers of the initiation of the investigations and indicated that it would consolidate the investigations. *See* APPX00403. CBP also provided notice that it was imposing interim measures pursuant to 19 U.S.C. § 1517(e), including that CBP would adjust unliquidated entries of covered by the investigation "to reflect that they are subject to the AD order on xanthan gum from China and cash deposits will be owed[,]" suspend liquidation for entries that entered on or after May 7, 2019, the date CBP initiated its investigation, and extend the period for liquidation for all unliquidated entries that entered befor May 7, 2019. *See* APPX00403.

On August 19, 2019, CBP sent GLōB, Ascension, UMD, and Crude additional requests for information, to which they responded on September 13, 2019. *See* APPX00185. In these responses, the importers each indicated that their merchandise was manufactured by a common supplier, Chem Fert Chemicals

8

(Chem Fert).  APPX00185-00186; *see also* APPX00051-00058 (Ascension);

APPX00062-00076 (Crude); APPX00078-00089 (GLōB); APPX00091-00093

(UMD).  On August 20, 2019, CBP also sent requests for information to Chem

Fert, who responded on September 3, 2019.  *See* APPX00186; *see also*

APPX00523-00528 (Chem Fert response).  The parties submitted additional

information to CBP and written arguments.  APPX00186.

On March 9, 2020, CBP issued its affirmative determination of evasion

covering the period of investigation from April 16, 2018, to March 9, 2020.  *See*

APPX00183-00202.  CBP explained that the EAPA statute outlines three elements

for CBP to address in reaching an evasion determination:

> 1) whether the entries in question are covered
> merchandise (*i.e.*, merchandise that is subject to an
> AD/CVD order) when they entered into the customs
> territory of the United States; 2) whether such entry was
> made by a material false statement or act or material
> omission; and 3) whether there was a resulting reduction
> or avoidance of applicable AD/CVD cash deposits or
> other security.

APPX00187.  CBP determined that the merchandise at issue was covered by the

scope of the AD Order.  *See* APPX00188.

Concerning GLōB, Ascension, UMD, and Crude, CBP stated that their

purported manufacturer, Chem Fert, had not cooperated to the best of its abilities,

and that "[n]either Chem Fert nor the importer[s] provided requested production

documentation related to the actual xanthan gum imported into the United States

that could have enabled CBP to determine the country of origin." APPX00187 (Ascension); *see also* APPX00194 (UMD), APPX00196 (Crude), APPX00198 (GLōB). CBP therefore determined it would apply adverse inferences on the question of who manufactured the merchandise at issue and make a determination based on available record information. *Id.*

Such available information included Chem Fert's representation that it "does not produce xanthan gum, but also that the xanthan gum it shipped to the importer[s] was manufactured in China." APPX00187 (Ascension); *see also* APPX00194 (UMD), APPX00196 (Crude), APPX00198 (GLōB). CBP also relied on data from the International Trade Commission included in CP Kelco's allegation letters, showing that "xanthan gum is made in China, Austria, France, and the United States, with no reference to India"; "large and rising volumes of imports into India from China of the category of merchandise including xanthan gum, while the volumes from other xanthan-gum producing countries (*i.e.*, Austria, France, and the United States) are minimal"; and there is a "history of attempted circumvention of the xanthan gum AD order by various companies." APPX00200-00201; *see e.g.*, APPX00348 (Ascension allegation). On the basis of this and other record information, CBP determined there was substantial evidence for the determination that the xanthan gum at issue was of Chinese origin and

transshipped through India and was subject to the China-wide entity rate in the AD

Order.  APPX00201.

Finally, CBP concluded that because "merchandise was misidentified as of

Indian origin" and free of duties at the time of entry, no cash deposits have been

collected on the entries, and there was therefore a resulting reduction or avoidance

of applicable antidumping duties.  APPX00187 (Ascension); *see also* APPX00194

(UMD); APPX00196 (Crude); APPX00198 (GLōB).  CBP rejected arguments by

the importers that there was no evasion because the merchandise in the entries at

issue was manufactured in and exported from China by entities for which the cash

deposit rate has been 0.00 percent.  *See, e.g.*, APPX00187 (Ascension).  CBP noted

that the importers' only support for this claim was sourced from a third-party

company that compiles shipment information and that identifies a "shipper" for

given entries, with no reference to manufacturers, producers, or exporters.  CBP

found this information was "inadequate" to support a determination that the

specific merchandise was entitled to a 0.0% rate, stating that the importers were

required "to provide documentation demonstrating the actual manufacturer and

exporter of the specific merchandise in question[.]"  APPX00187-00188

(Ascension); *see also* APPX00194 (UMD); APPX00197 (Crude); APPX00199

(GLōB).

11

**B. Administrative Review Of The Evasion Determination**

Plaintiffs-Appellants and an additional importer not participating in this appeal each sought an administrative review by CBP's Office of Regulations and Rulings (ORR) pursuant to 19 U.S.C. § 1517(f). *See* APPX00263-00264. ORR conducted a *de novo* review of the administrative record and affirmed the March 9, 2020 Determination. APPX00264.

First ORR found that the importer had entered "covered merchandise" into the United States noting that these importers filed entries of xanthan gum and classified the merchandise in subheading 3913.90.20 of the Harmonized Tariff Schedule of the United States, which ORR found was covered by the scope of the AD Order. APPX00276. ORR stated that the importers had claimed India as the country of origin at the time of entry but found that "[n]otwithstanding the entry documents[,]" substantial record evidence supported the determination that the xanthan gum entered by these importers originated in China. APPX00277. ORR described Chem Fert's response to CBP's questionnaires in which Chem Fert admitted it was not the manufacturer of the xanthan gum at issue, and that it "imports the xanthan gum into India and then repacks the xanthan gum so it can then be exported out of India." APPX00277. ORR also noted that GLōB, Ascension, UMD, and Crude "concede that the merchandise was not of Indian

origin[.]" APPX00277.  ORR therefore concluded that the merchandise at issue was "covered merchandise[.]" APPX00277.

ORR also determined that GLōB, Ascension, UMD, and Crude had engaged in evasion of the AD Order because they had imported Chinese-origin xanthan gum but falsely identified India as the country of origin.  ORR also found that the importers had falsely identified their entries as being not subject to antidumping duties at the time entry, which resulted in no cash deposits being applied to the merchandise.  APPX00277.

ORR rejected arguments that there was no evasion because the errors in entry documents were clerical errors.  APPX00278.  ORR noted that even if this argument was correct, "the definition of 'evasion' does not expressly require an intentional or purposeful attempt to avoid duties, or provide for reasonable care as a defense to evasion."  APPX00278.  ORR added that under the definition of evasion in 19 U.S.C. § 1517(a)(5), "it is sufficient that an importer enters 'covered merchandise' into the United States by means of any material false document, statement, act, or omission that results in the reduction or non-payment of antidumping duties or deposits thereof, for evasion to occur."  APPX00278.

ORR also rejected arguments by the importers they acted to the best of their ability to provide production data, and that CBP should have extended the time under 19 C.F.R. § 165.22(c) to allow the importers to continue engaging in legal

actions in India to collect information concerning production of the merchandise. APPX00278. ORR also rejected arguments from these importers that CP Kelco was not producing oilfield grade xanthan gum in the United States, and that this detracted from the weight of the evidence because "of changed circumstances that could remove oilfield grade xanthan gum from the antidumping order." APPX00278. In rejecting these arguments, ORR found that neither argument related to the "narrow" question in an EAPA investigation: whether merchandise that is subject to an AD Order "entered by means of a material falsehood or omission resulting in the non-payment or reduction of AD duties." APPX00279.

### C. Plaintiffs-Appellants Challenge CBP's Evasion Determinations At The Court Of International Trade

On August 26, 2020, Plaintiffs-Appellants each filed separate actions at the trial court challenging CBP's determination of evasion and the administrative review of that determination. APPX00291-00301. In addition, another importer that is not participating in this appeal, All One God Faith Inc. d/b/a Dr. Bronner's Magic Soaps (Dr. Bronner's), also filed a complaint. APPX00281-00290. Plaintiffs-Appellants each claimed jurisdiction pursuant to 28 U.S.C. § 1581(c) and asserted nearly identical challenges to CBP's EAPA determinations pursuant to 19 U.S.C. § 1517(g). *See, e.g.*, APPX00305 (GLōB Compl.). The trial court consolidated those actions. *See* APPX00285.

14

### D. CBP's Liquidation of Entries And Related Challenges

As described above, CBP indicated that it would implement "interim measures" during its EAPA investigation.  These interim measures included extending the liquidation for unliquidated entries that were entered before the date of initiation, May 9, 2019.  *See* APPX00402-00403.  However, in an apparent error, CBP liquidated entries subject to the EAPA investigation after the enactment of interim measures.  Relevant to this appeal are GLōB's two entries, one entered on January 6, 2019, and the other entered on March 6, 2019.  *See* APPX00014.  CBP liquidated these two entries on October 4, 2019, and on March 2, 2020, GLōB filed an administrative protest pursuant to 19 U.S.C. § 1514 contesting these liquidations.  *See* APPX00014.  When GLōB initiated this action at the trial court in August 2020, its complaint asserted that it was "the U.S. importer of record of the merchandise subject to CBP's EAPA determinations[.]"  *See* APPX00305 ¶ 3.  However, the complaint did not state that GLōB's entries had already liquidated or that it had filed an administrative protest concerning these liquidations, which was still pending.

CBP denied GLōB's administrative protest on April 9, 2021.[3]  GLōB, on

---

[3] The trial court's opinion states that CBP denied the protest on July 8, 2021 (APPX00014), however that date is incorrect.  GLōB's September 28, 2021 Motion for Temporary Restraining Order and Preliminary Injunction correctly stated that CBP denied the protest on April 9, 2021.  *See* Motion for Preliminary

September 28, 2021, filed a Motion for Temporary Restraining Order and

Preliminary Injunction asking that the trial court require CBP to return GLōB's

liquidated entries of xanthan gum to unliquidated status, or alternatively, to

suspend the protest during the pendency of the trial court litigation.  *See*

APPX00530-00531.  The trial court denied the motion on September 30, holding

that it did not possess subject matter jurisdiction to review entries that have already

been liquidated.  *Id.*

## III.    **Trial Court's Determination**

Dr. Bronner's, GLōB, Ascension, UMD, and Crude filed motions for

judgment on the agency record on February 16, 2021.  APPX00285-00286 (Dkt.

Nos. 27-30).  The government filed its opposition to these motions and a partial

motion to dismiss.  APPX00286 (Dkt. Nos. 40-41).  After supplemental briefing

and oral argument, the trial court issued an opinion on August 18, 2022, dismissing

Dr. Bronner's and GLōB's claims and denying Ascension, UMD, and Crude's

motions for judgment on the agency record.  APPX00024.

---

Injunction, Ct. Int'l Trade 20-00164, ECF No. 52 at 2.  However, in Plaintiff-
Appellants' response to the trial court's questions, the protest is listed as having
been denied on July 8, 2021.  *See* Ct. Int'l Trade 20-00164, ECF No. 61 at Ex. 1.
CBP did not identify this error in its responses to the Court (Ct. Int'l Trade 20-
00164, ECF No. 65) and the incorrect July date appears to have been included in
the trial court's opinion.

**A. The Trial Court's Conclusion That It Lacked Jurisdiction Over Liquidated Entries**

The trial court determined that it lacked subject matter jurisdiction over GLōB's complaint because GLōB's entries had become liquidated, and those liquidations had become final.  APPX00015-00018.  The trial court noted that 19 U.S.C. § 1517(e)(1) "provides for suspension of liquidation during CBP's EAPA investigation" and that 19 U.S.C. § 1517(d)(1)(A)(i) "provides that upon determination of evasion CBP shall likewise 'suspend the liquidation of unliquidated entries of such covered merchandise that are subject to the determination and that enter on or after the date of the initiation of the [EAPA] investigation.'"  APPX00015 (citing 19 U.S.C. § 1517, alteration in original).  The trial court concluded "[t]he jurisdictional grant over CBP's determination of evasion effectuated by 19 U.S.C. § 1517(g) and 28 U.S.C. § 1581(c) does not, however, encompass the contestation of liquidation (erroneous or otherwise) of an entry subject to such determination."  APPX00015.  Because the EAPA statute does not provide a basis for exercising jurisdiction over liquidated entries, the trial court concluded that "to the extent an importer wishes to appeal the liquidation of its merchandise either before or after a determination of evasion, that appeal must traverse the typical channels."  APPX00016.  The trial court elaborated that "[w]here erroneous liquidation has occurred—including where CBP has failed to comply with 19 U.S.C. § 1517(d)(1)(A)(i)'s requirement that it suspend the

17

liquidation of subject merchandise—the aggrieved importer must first file a protest specifying CBP's error as set out in 19 U.S.C. § 1514(c)."  APPX00016.

The trial court explained that "[t]he Government acknowledge[d] that its liquidation of the entries was 'evidently in error'" but the court concluded that an administrative protest pursuant to 19 U.S.C. § 1514(a) "provides a statutory remedy for such error."  APPX00017.  The trial court elaborated that, although GLōB protested the liquidations, CBP denied the protest and GLōB did not then seek judicial review of the denied protest pursuant to 28 U.S.C. § 1581(a). APPX00017.  The trial court concluded that this failure to appeal "'result[ed] in those liquidations becoming final and conclusive.'"  APPX00018 (citing *United States v. Am. Home Assur. Co.*, 789 F.3d 1313, 1323 (Fed. Cir. 2015)).[4]  Finally, the trial court noted that it had informed GLōB in its September 30, 2021 order that the trial court did not possess subject matter jurisdiction over entries that had already been liquidated except upon commencement of an action under 28 U.S.C. § 1581(a).  However, by the time of the trial court's final opinion in August 2022, nearly a year later, "the clock ha[d] run out on . . . GLōB's opportunities to timely appeal CBP's denials[.]"  APPX00018 n.7 (citing APPX00529-00530).  The trial

---

[4] The trial court also determined that it lacked jurisdiction over Dr. Bronner's complaint because its entries had also liquidated and Dr. Bronner's did not properly appeal the liquidations at the trial court.  APPX00004.

court also noted that if it had jurisdiction over GLōB's entries, the trial court would have denied GLōB's challenges to CBP's evasion determinations for the reasons articulated in its opinion affirming CBP's evasion determinations. *See* APPX00019 n.9.

## B. The Trial Court's Holding Sustaining CBP's Determinations Of Evasion

The trial court considered the remaining challenges to CBP's evasion determinations by Ascension, UMD, and Crude, and held that CBP's determinations are not arbitrary, capricious, or an abuse of discretion and are in accordance with law. *See* APPX00019-00025. The trial court considered two categories of challenges, first whether CBP should have sought a determination from Commerce as to whether the entries contained "covered merchandise" because of changes in supply in the domestic industry, and second, whether CBP erred by applying adverse inferences concerning who manufactured the merchandise at issue. The trial court denied both challenges and sustained CBP's determinations in all respects. *See* APPX00019.

First, the trial court considered Plaintiffs-Appellants' argument that CBP should have used 19 U.S.C. § 1517(b)(4) to refer a question to Commerce as to whether the entries contained "covered merchandise." Plaintiffs-Appellants argued that Commerce should have referred a changed circumstances review to Commerce because CP Kelco had undergone a "'corporate strategy shift'" and as a

result "'it is possible or even likely that CP Kelco is not subject to material injury by oilfield xanthan produced in China[.]" APPX00017 (internal citation omitted). The trial court rejected this argument, finding that Plaintiffs-Appellants based their argument on a single 2018 email from CP Kelco describing changes in production at two of CP Kelco's plants. APPX00020 (internal citation omitted). The trial court found no indication in the emails provided as to whether CP Kelco's production of oilfield xanthan gum "had been permanently discontinued" and found that it "cannot be discerned on what basis Consolidated Plaintiffs conclude that the alleged changes in CP Kelco's production volume would necessitate a changed circumstances review for the AD Order[.]" APPX00021. The trial court concluded that even if a changed circumstances review was appropriate, Plaintiffs-Appellants did "not plausibly allege that CBP was obligated to refer the matter to Commerce such that its failure to do so was an abuse of discretion." APPX00021. The trial court also noted that the importers had not "ma[d]e any argument that a determination of changed circumstances would retroactively apply to the Subject Entries[.]" Finally, the trial court cited CBP's administrative review determination that "'[w]hether there may be a change in circumstances affecting the domestic industry such that the [AD] Order's scope may be modified by Commerce at a later date does not change the fact that, at the time of entry, the xantha[n] gum was covered merchandise.'" APPX00021 (citing APPX00280).

20

The trial court also concluded that CBP did not abuse its discretion by applying adverse inferences, determining that CBP's decision was consistent with 19 U.S.C. § 1517(c)(2)(A) and 19 U.S.C. § 1517(c)(3)(A). Specifically, the trial court noted that Plaintiffs-Appellants identified the manufacturer as Chem Fert, who is the same manufacturer "that the Consolidated Plaintiffs state they were forced to sue in order to 'obtain documentation' relevant to the EAPA investigation." APPX00022. The trial court found that it is "thus uncontroverted that the manufacturers were uncooperative" and so CBP's application of adverse inferences is consistent with 19 U.S.C. § 1517(c)(3)(B). *See* APPX0022.

## SUMMARY OF THE ARGUMENT

The trial court did not err in dismissing GLōB's claims for lack of jurisdiction. CBP had liquidated GLōB's entries and GLōB had not appealed the liquidations through channels that would permit the trial court to exercise jurisdiction over those entries. Therefore, those liquidations became final and conclusive, and the trial court could not effectuate relief for GLōB's claims challenging the EAPA determination.

Moreover, CBP acted in accordance with law and did not abuse its discretion in making its evasion determinations. Although Plaintiffs-Appellants challenge those determinations, they do not dispute that the merchandise originated in China, not in India, notwithstanding that the entry documents filed with CBP identified

India as the country of origin.  The trial court correctly concluded that CBP did not abuse its discretion in declining to refer a question to Commerce concerning whether the xanthan gum at issue was covered by the AD Order as a result of an alleged change in the availability of oilfield xanthan gum by the domestic industry. The trial court also correctly concluded that CBP had not erred in applying adverse inferences because Chem Fert was uncooperative with CBP's investigation and neither Chem Fert nor Plaintiffs-Appellants provided information on the record concerning who manufactured the merchandise at issue.  Further, the trial court correctly found that CBP's inference that the xanthan gum was manufactured in China and not India was "independently supported by the record."

Because Plaintiffs-Appellants have failed to establish any error by the trial court, the judgment should be affirmed.

## STANDARD OF REVIEW

### I.    Standard Of Review Concerning Subject Matter Jurisdiction

A court's determination of subject matter jurisdiction is a "threshold" inquiry.  *Steel Co. v. Citizens For A Better Env't*, 523 U.S. 83, 94-95 (1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Where subject-matter jurisdiction is challenged, the "party invoking the [trial court's] jurisdiction has the burden of establishing that

jurisdiction." *Wanxiang Am. Corp. v. United States,* 12 F.4th 1369, 1373 (Fed. Cir. 2021); *McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189 (1936). Whether to grant a motion to dismiss for lack of jurisdiction is a question of law. *JCM Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

## II.    Standard Of Review For EAPA Determinations

The Court applies anew the same standard of review used by the trial court. *Atar S.r.L. v. United States*, 730 F.3d 1320, 1325 (Fed. Cir. 2013). Under EAPA, the trial court must determine whether CBP's determination issued pursuant to 19 U.S.C. § 1517(c) or the administrative review decision issued pursuant to 19 U.S.C. § 1517(f) was "conducted in accordance with those subsections." 19 U.S.C. § 1517(g)(2). In so doing, the Court will examine whether CBP "fully complied with all procedures" under the EAPA statute and "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 19 U.S.C. § 1517(g)(2).

### ARGUMENT

## I.    The Trial Court's Dismissal Of GLōB's Claims Should Be Affirmed

### A. Liquidation of GLōB's Entries Has Become Final And Consequently No Relief Can Be Awarded For GLōB's Claims

When goods are imported into the United States, CBP is obligated to "fix the final amount of duty to be paid on such merchandise and determine any increased or additional duties, taxes, and fees due[.]" 19 U.S.C. § 1500(c). CBP calculates

the "final computation or ascertainment of duties" through a process called "liquidation." 19 C.F.R. § 159.1. To the extent CBP errs in liquidating an entry of merchandise, Congress provided a remedy—importers may file an administrative protest concerning "the liquidation or reliquidation of an entry[.]" *See* 19 U.S.C. § 1514(a)(5). A protest must be filed within 180 days of the liquidation. *See* 19 U.S.C. § 1514(c)(3).

If CBP agrees with the importer, it can grant the protest and, for example, reliquidate the entries. The process of reliquidation allows CBP to refund any duties that were erroneously collected at the time of liquidation. However, if CBP denies a protest, in whole or in part, the importer may commence a civil action in the Court of International Trade within 180 days from the mailing of the notice of the denial. *See* 28 U.S.C. § 2636(a)(1). The Court of International Trade's jurisdiction over such matters is provided in 28 U.S.C. § 1581(a). The Court of International Trade can, among other relief, order reliquidation of an entry. *See, e.g.*, *Koyo Corp. v. United States*, 497 F.3d 1231, 1243 (Fed. Cir. 2007).

However, if an importer does nothing to challenge a liquidation, the liquidation becomes "final and conclusive" 180 days from the date of liquidation. 19 U.S.C. § 1514(a). Likewise, if an importer does not challenge CBP's denial of a protest concerning liquidation, that liquidation becomes "final and conclusive"

once the importers' period for seeking judicial review pursuant to 28 U.S.C.

§ 2636(a)(1) expires. *Id.* Section 1514(a) provides, in relevant part:

> [A]ny clerical error, mistake of fact, or other
> inadvertence, whether or not resulting from or contained
> in an electronic transmission, adverse to the importer, in
> any entry, liquidation, or reliquidation, and, decisions of
> the Customs Service, including the legality of all orders
> and findings entering into the same, as to—
>
> . . .
>
> the liquidation or reliquidation of an entry . . .
>
> shall be *final and conclusive* upon all persons (including
> the United States and any officer thereof) unless a protest
> is filed in accordance with this section, or unless a civil
> action contesting the denial of a protest, in whole or in
> part, is commenced in the United States Court of
> International Trade[.]

19 U.S.C. § 1514(a) (emphasis added).  Once a liquidation becomes final and

conclusive, generally neither CBP nor the courts may alter or set aside the

transaction, including the assessment of duties.

There is no dispute that CBP erred in liquidating GLōB's entries or that

GLōB filed an administrative protest concerning those liquidations.  As described

above (*supra* pp. 15-16), GLōB's two entries are covered by the period of CBP's

EAPA investigation.  Although CBP imposed interim measures pursuant to

19 U.S.C. § 1517(e), including extending the liquidation of entries during the

EAPA investigation, in an apparent error, CBP liquidated GLōB's two entries

while the EAPA investigation was still underway.  On March 2, 2020, GLōB filed

an administrative protest pursuant to 19 U.S.C. § 1514 contesting the liquidation of

its two entries and CBP denied that protest on April 9, 2021.

GLōB's efforts to follow the procedures in 19 U.S.C. § 1514 stop with its

administrative protest to CBP.[5]  GLōB did not file a complaint at the Court of

International Trade under 28 U.S.C. § 1581(a) challenging CBP's denial of

GLōB's protest.  Because GLōB protested the liquidation of its entries but did not

file a complaint challenging the denial of that protest within the 180-day deadline,

CBP's decision on that protest became final and the liquidation of the entries also

became final and conclusive.  *See* 19 U.S.C. § 1514(a); 28 U.S.C. § 2636(a)(1).

Instead of filing an action challenging the liquidations at the trial court

pursuant to 28 U.S.C. § 1581(a), GLōB attempted to shoehorn a challenge to

CBP's denial of a protest into this litigation, in which GLōB challenges CBP's

EAPA determinations in an action brought pursuant to 28 U.S.C. § 1581(c).

Congress, however, created two separate jurisdictional provisions for purposes of

reviewing the decisions challenged by GLōB.  Specifically, the trial court reviews

decisions of CBP as to the liquidation of an entry under 28 U.S.C. § 1581(a), and

---

[5] In a currently pending appeal in *Royal Brush Manufacturing, Inc. v. United States*, Federal Circuit Appeal No. 22-1226, the government moved to dismiss the appeal on the grounds that the entries of merchandise subject to the EAPA case have all been liquidated.  *See* ECF No. 60 (Dec. 7, 2022).  However in that case, the importers did not file a protest.  Here the importers filed a protest but failed to appeal the denial of that protest.

separately, the trial court reviews decisions of CBP as to the EAPA statute under

28 U.S.C. § 1581(c). "'[T]he protest procedure cannot be [so] easily

circumvented.'" *Arp Materials, Inc. v. United States*, 47 F.4th 1370, 1378 (Fed.

Cir. 2022) (citing *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324, 1327

(Fed. Cir. 2006)).

GLōB first raised the liquidation of its entries to the trial court in a

September 28, 2021 Motion for Temporary Restraining Order and Preliminary

Injunction, asking that the trial court require CBP to return GLōB's liquidated

entries of xanthan gum to unliquidated status, or alternatively, to suspend the same

protest during the pendency of the Court of International Trade litigation. *See*

APPX00288 (Dkt. No. 52). In a September 30, 2021 order denying that motion,

the trial court stated that it did "not possess subject matter jurisdiction to review

entries that have already been liquidated except upon commencement of an action

challenging denial of protest—which GLōB has not lodged—and therefore lacks

the authority to provide the requested relief." APPX00530. The trial court noted

that "GLōB is not at risk of irreparable harm because it may yet timely file an

action under 28 U.S.C. § 1581(a) contesting the denial of its protest[.]"[6]

---

[6] As described in *supra* note 3, the trial court's decision states that the protest was
denied on July 8, 2021, whereas the protest was denied on April 8, 2021.
However, this error does not compromise the trial court's analysis. GLōB still
could have filed an action pursuant to 28 U.S.C. § 1581(a) after CBP denied its

APPX00531.  However, GLōB chose not to follow the guidance of the trial court and did not initiate an action pursuant to 28 U.S.C. § 1581(a) appealing the denial of its protest.

In its August 2022 opinion, the trial court dismissed GLōB's claims. Contrary to GLōB's arguments, the trial court did not conclude that 28 U.S.C. § 1581(c) was the incorrect jurisdictional avenue for pursuing GLōB's EAPA-related challenges.  The trial court, in fact, exercised jurisdiction pursuant to 28 U.S.C. § 1581(c) over EAPA-related challenges from other importers and determined that CBP acted in accordance with law and did not abuse its discretion in reaching its EAPA determinations.  *See* APPX00019-00024.  Rather, the trial court concluded that it lacked the ability to grant relief for GLōB's EAPA claims because CBP had liquidated the relevant entries, and those liquidations had become final pursuant to 19 U.S.C. § 1514(a).  *See* APPX00019.

The trial court's decision is consistent with the framework discussed above. As described, rectifying erroneous liquidations is accomplished by the trial court in a civil action commenced under 28 U.S.C. § 1581(a) and a party cannot use other jurisdictional provisions of the trial court as a means of circumventing this process.

---

protest or after the trial court denied its motion for Motion for Temporary Restraining Order and Preliminary Injunction as the 180 day-window for filing such an appeal expired on October 6, 2021.

*See, e.g., Arp Materials*, 47 F.4th at 1378-79.  Thus, by not commencing a section 1581(a) action, GLōB foreclosed any possibility for the trial court to address the erroneous liquidation of its entries.

The finality of the liquidations also foreclosed any ability of the trial court to render relief, within the context of the separate existing section 1581(c) action, for GLōB's claims challenging the determination of evasion under EAPA.  As referenced above, duty refunds are typically accomplished by CBP through the liquidation or reliquidation of entries.  But the EAPA statute has no provision permitting the reliquidation of entries or the changing of duties after liquidation.  Consequently, once a liquidation occurs and becomes final, a subsequent decision by the trial court regarding claims challenging an EAPA determination can have no effect on the duties assessed on the entries.  In a similar context involving 28 U.S.C. § 1581(c) actions challenging determinations imposing antidumping and countervailing duties, this Court has determined that "[o]nce liquidation occurs, a subsequent decision by the trial court on the merits of [a claimant's] challenge can have no effect on the dumping duties assessed on entries . . . ."  *Zenith Radio Corp. v. United States*, 710 F.2d 806, 810 (Fed. Cir. 1983) (discussing 19 U.S.C. § 1516a); *see also SKF USA, Inc. v. United States*, 512 F.3d 1326, 1329 (Fed. Cir. 2008) ("The *Zenith* rule renders a court action moot once liquidation occurs.").  That is because the antidumping and countervailing duty statute, like the EAPA

statute, has "no provision permitting reliquidation . . . or imposition of higher

dumping duties after liquidation[.]" *Zenith Radio*, 710 F.2d at 810.

In applying this relevant framework, the trial court properly dismissed

GLōB's EAPA claims.

### B. **Plaintiffs-Appellants' Jurisdictional Arguments Lack Merit**

Plaintiffs-Appellants argue that GLōB properly asserted jurisdiction under

28 U.S.C. § 1581(c), and not 28 U.S.C. § 1581(a), because GLōB was challenging

an EAPA determination.  Blue Br. 12.  They argue that EAPA expanded the trial

court's 28 U.S.C. § 1581(c) jurisdiction to include civil actions commenced under

19 U.S.C. § 1517, including challenges related to liquidations.  Blue Br. 12 (citing

*Juancheng Kangtai Chemical Co. Ltd. v. United States*, 932 F.3d 1321, 1331 (Fed.

Cir. 2019)).  However, this argument lacks merit, as nothing in 19 U.S.C. § 1517

describes an authority to reliquidate entries under the EAPA statute.

While 19 U.S.C. § 1514(a) carves out certain exceptions to finality—

including voluntary reliquidations pursuant to 19 U.S.C. § 1501—the EAPA

statute, 19 U.S.C. § 1517, is not one of those exceptions.  *See* 19 U.S.C. § 1514(a).

Binding precedent has repeatedly affirmed that, once an entry has been

liquidated—even if it is uncontested that the liquidation was in error—the Court of

International Trade does not possess subject matter jurisdiction over that entry

unless the liquidation is properly protested pursuant to 19 U.S.C. § 1514.  *See, e.g.*,

*Am. Home Assur. Co.*, 789 F.3d at 1323 ("[E]ven though it is undisputed that Customs' 2005 reliquidations were erroneous, [the importer]'s failure to challenge those reliquidations in the Court of International Trade resulted in those liquidations becoming final and conclusive."); *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1557 (Fed. Cir. 1997) ("The language of section 1514, that a liquidation will be 'final and conclusive' unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit."); *Carbon Activated Corp. v. United States*, 791 F.3d 1312, 1315-17 (Fed. Cir. 2015) (same).

Plaintiffs-Appellants point to several cases that they say support their position that 28 U.S.C. § 1581(c) was the correct jurisdictional provision for GLōB's entire claim, including its challenge to the liquidations. *See* Blue Br. 14. However, these cases offer no support for the position that the EAPA statute created an exception to the finality provided in 19 U.S.C. § 1514(a). Plaintiffs-Appellants cite *Acquisition 362, LLC v. United States*, 517 F. Supp. 3d 1318, 1324 (Ct. Int'l Trade 2021), however that trial court decision is inapposite to the issue presented in this case. In *Acquisition 362*, the plaintiff brought an action asserting that CBP failed to apply a revised countervailing duty rate determined by Commerce in an administrative review. The trial court concluded that there was

31

no protestable decision under 19 U.S.C. § 1514(a) as CBP had already liquidated the entries prior to Commerce's calculation of a revised countervailing rate and plaintiff had not filed a timely protest of those liquidations. As such, the trial court found that it lacked jurisdiction pursuant to 28 U.S.C. § 1581(a). *Id.* 1323-24. The decision is irrelevant to the question here, which is whether the trial court could effectuate relief over GLōB's EAPA claims while exercising jurisdiction under 28 U.S.C. § 1581(c), when the liquidation of the entries had already become final.

Plaintiff-Appellants also argue that "[t]he absence of an express reliquidation provision [in 19 U.S.C. § 1517] should not be read as a prohibition of such relief . . . ." Blue Br. 15. In support, Plaintiffs-Appellants cite cases concerning the finality of liquidation where an importer's challenge primarily concerns a government entity other than CBP. *See* Blue Br. 15, 21 (citing *Shinyei Corp. of Am. v. United States*, 355 F.3d 1297 (Fed. Cir. 2004) and *American Signature, Inc. v. United States*, 598 F.3d 816 (Fed. Cir. 2010)).

Plaintiffs-Appellants' reliance on *Shinyei* and *American Signature* misses the mark. As an initial matter, these cases grapple with the question of how to apply 19 U.S.C. § 1514 in the context of erroneous liquidations where CBP is acting in a ministerial capacity, *i.e.*, CBP is implementing instructions from another government agency and the alleged error is not with CBP's decision to liquidate, but in the instructions from the other government agency. *See Sunpreme,*

32

*Inc. v. United States*, 946 F.3d 1300, 1320 (Fed. Cir. 2020). 19 U.S.C. § 1514 offers a remedy by which CBP can reconsider its own decisions, however, it does not authorize CBP to consider the efficacy of a decision by another government agency. Another distinguishing factor is that this line of cases addresses potential avenues for relief in an action brought under 28 U.S.C. § 1581(i), the Court of International Trade's residual jurisdiction, where an importer's challenge could not have been protested under 19 U.S.C. § 1514 and therefore could not have sought judicial relief pursuant to 28 U.S.C. § 1581(a).

These cases are not relevant to the case at hand, because here GLōB filed an action pursuant to 28 U.S.C. § 1581(c) and challenges *CBP's* EAPA determinations. *See* APPX00303; APPX00305 ¶ 1. GLōB has not filed an action challenging CBP's protest denial, however, GLōB attempted to shoehorn a challenge to CBP's liquidation of entries into its challenge to CBP's EAPA determinations. *Shinyei*, *American Signature*, and the related progeny of cases do not support this attempt.

Plaintiffs-Appellants cited *Shinyei* for the proposition that the Court of International Trade can order reliquidations (Blue Br. 22), however *Shinyei* did so in context that is not relevant to this appeal. In *Shinyei*, Commerce conducted an administrative review of an antidumping duty order, and after the proceeding became final, including judicial review of the proceeding, Commerce instructed

CBP to liquidate the subject entries in accordance with its final amended determination. *Shinyei*, 355 F.3d at 1300-02. Shinyei commenced suit under 28 U.S.C. § 1581(i) with the Court of International Trade and sought a writ of mandamus directing CBP to liquidate Shinyei's entries at the rates set forth in the final amended determination, or to declare Commerce instructions in violation of 19 U.S.C. § 1675(a)(2). *Id.* at 1303. Because Shinyei was seeking immediate liquidation*,* it did not seek an injunction to suspend liquidation of the entries at issue. *Id.* While this litigation was pending, CBP followed the instructions and liquidated the entries, liquidations which Shinyei protested "'preserve its rights in the case it should be ultimately decided that the . . . liquidations reflect Customs Error rather than Commerce Error.'" *Id.* at 1302 n.2 (internal citation omitted). The importer amended its action to seek reliquidation of the entries. *Id.* at 1303. The government moved to dismiss arguing, among other things, that the importer could not challenge Commerce's instructions because the challenged determination was not a decision of CBP, and the trial court granted the motion. *Id.* at 1303-04.

This Court reversed the dismissal, holding that liquidation did not divest the trial court of jurisdiction in a 28 U.S.C. § 1581(i) action challenging Commerce's instructions. *Id.* at 1305-12. The Court explained that section 1514(a) is not "fairly construed to prohibit reliquidation in all cases, particularly when the alleged

error is with Commerce instructions . . . , not 'decisions of the Customs Service' as to liquidation." *Id.*

However, the *Shinyei* Court recognized that the result would have been different had the action involved a protest of erroneously liquidated entries under 19 U.S.C. § 1514(a). *Id.* at 1302 n.2, 1310-11. The Court explained that, if a party alleges an error by CBP, its claim falls under 19 U.S.C. § 1514, governing the protest of CBP decisions, a denial of which is reviewable by the Court of International Trade under jurisdiction conferred by 28 U.S.C. § 1581(a). *See id.* at 1302 n.2 (recognizing that, if the error was in Customs' liquidation of the subject entries despite correct instructions, the importer's "appropriate avenue for relief would be under 19 U.S.C. § 1514"); *see also id.* at 1310-11. Indeed, since *Shinyei*, this Court has reaffirmed that an importer is not entitled to reliquidation when the importer "failed to avail itself of . . . alternative remedies." *Mukand Int'l Ltd. v. United States*, 502 F.3d 1366, 1369, 1370 (Fed. Cir. 2007).

This Court's decision in *American Signature*, like *Shinyei*, involved an alleged error in Commerce's liquidation instructions, and not a decision made by CBP. *Id.*, 598 F.3d at 829. The importer in *American Signature* filed an action pursuant to 28 U.S.C. § 1581(i) challenging Commerce's authority to issue certain corrected liquidation instructions. *Id.* at 821-22. The importer filed a motion for preliminary injunction seeking to enjoin liquidation or reliquidation of the entries,

which the trial court denied. *Id.* The trial court determined that the importer had not shown it would be irreparably harmed without an injunction, concluding that if CBP did liquidate the entries in accordance with the allegedly incorrect liquidation instructions, the importer would have a remedy pursuant to *Shinyei*. *Id*. at 829. This Court reversed, holding "that the possibility of *Shinyei* relief does not defeat [plaintiff's] claim of irreparable harm" and noting that *Shinyei* claims are procedurally complex. *Id*. at 829. The Court rejected arguments that section 1514 was sufficient to protect the importer's interest, because "as in *Shinyei*, the alleged agency error is on the part of Commerce, not Customs" and so "section 1514(a) is inapplicable." *Id.*

Unlike the cases in *Shinyei* and *American Signature*, which were both brought pursuant to 28 U.S.C. § 1581(i), GLōB filed this action pursuant to 28 U.S.C. § 1581(c). *Shinyei* and *American Signature* offer no support for the position that the trial can order reliquidation in a 28 U.S.C. § 1581(c) case, in which the liquidations became final, and the importer had an available avenue of relief for challenging the liquidations under 19 U.S.C. § 1514 and 28 U.S.C. § 1581(a). Unlike in *Shinyei* and *American Signature*, GLōB's complaint challenges the outcome of the EAPA determination, it does not challenge liquidation instructions related to a final determination. APPX00304 ¶ 1. The Court should reject GLōB's attempt to shoehorn its challenge to the liquidation of

its entries into its challenge to the EAPA determinations. This attempt ignores the jurisdictional requirements for the trial court when considering a challenge to CBP's decision to liquidate entries, which is a decision that can, and was, protested under 19 U.S.C. § 1514.

Plaintiff also cites *Zenith Radio* (Blue Br. 19-20), another case involving a request for a preliminary injunction to prevent liquidation. In that case, the Court reversed the trial court's denial of a motion for preliminary injunction, stating that absent a preliminary injunction, a challenge to an administrative review proceeding could became moot when liquidation occurred. *Zenith Radio*, 710 F.2d at 810. The facts of *Zenith* are very different than the present circumstances, where CBP had already liquidated GLōB's entries, and rather than file an action challenging those liquidations, GLōB filed a motion for preliminary injunction asking the Court to return Plaintiff's liquidated entries of xanthan gum to unliquidated status. As described above, the decision in *Zenith Radio* in fact supports the trial court's determination that GLōB's challenge to CBP's evasion determinations under 28 U.S.C. § 1581(c) became moot once the liquidation of GLōB's entries became final. *See Zenith*, 710 F.2d at 810.

Plaintiffs-Appellants also argue that CBP's EAPA-related regulations, specifically 19 C.F.R. § 165.28(a), creates an exception to finality. *See* Blue Br. 21. Plaintiffs-Appellants emphasize the language that for "'entries of covered

merchandise that are already liquidated when an affirmative determination is made as to evasion under § 165.27, CBP will initiate or continue ***any*** appropriate actions separate from this proceeding.'"  Blue Br. 21 (citing 19 C.F.R. § 165.28(a) (emphasis added in original quote)).  However, that regulation talks about actions CBP might take outside of the EAPA proceeding, moreover, nothing in that regulation states that CBP can reliquidate entries once a liquidation has become final pursuant to 19 U.S.C. § 1514(a).[7]

Finally, Plaintiffs-Appellants argue that the Court of International Trade must have jurisdiction over liquidated entries pursuant to 28 U.S.C. § 1581(c) because "[[n]o law allows for entries to be protested ***and*** suspended until a final CIT outcome" of an EAPA determination that is challenged at the Court of International Trade.  Blue Br. 16 (emphasis in original).  This argument lacks merit.  The EAPA statute directs CBP to suspend the liquidation of entries covered by an EAPA investigation.  *See* 19 U.S.C. § 1517(e).  This suspension, however, dissolves when the investigation over.  If a party seeks judicial review of an EAPA

---

[7] In a footnote, Plaintiffs-Appellants cite CBP's interim EAPA regulation.  The interim regulation describes steps CBP could then take if it makes an affirmative evasion determination, including "'***reliquidating*** entries as provided by law[.]'"  Blue Br. 21n.1 (internal citation omitted) (emphasis added in original quote).  However this interim regulation does not provide an authority to reliquidate entries in contradiction with 19 U.S.C. § 1514(a), especially since the interim regulations provided that CBP could reliquidate entries "as provided by law[,]" *i.e.*, to the extent permitted by law.

determination at the trial court, it must seek a preliminary injunction to prevent

liquidation during litigation (*see*, *e.g.*, the circumstances of *Zenith Radio*).  During

any judicial review of an EAPA determination, interested parties can, and routinely

do, seek a preliminary injunction to prevent liquidation during the litigation.  *See,

e.g.*, *Endura Products, Inc. v. United States* (Ct. Int'l Trade No. 19-00190) (ECF

No. 10) (Oct. 17, 2019) (issuing order enjoining liquidation during review of

EAPA determination).  Plaintiffs-Appellants' argument that "[n]o law allows" for

entries to be suspended during judicial review of an EAPA determination is

therefore without merit, because the trial court has the authority to enter a

preliminary injunction preventing liquidation.[8]

---

[8] The trial court's injunctive powers are also used to prevent liquidation in the
context of Commerce's antidumping/countervailing duty investigations and
reviews.  Liquidations are automatically suspended during Commerce's
proceedings.  *See* 19 C.F.R. 351.212(b)(2).  However, once Commerce reaches a
final determination, suspension of liquidation is no longer automatic.  If a party
challenges Commerce's determination at the trial court, suspension of liquidation
is routinely accomplished by filing consent motions for preliminary injunctions to
enjoin liquidations.  *See Qingdao Taifa Grp. Co. v. United State*s, 581 F.3d 1375,
1380 (Fed. Cir. 2009) (describing the trial court's power to enjoin liquidation);
*Zenith*, 710 F.2d 810–11 (describing the need for injunctions).  19 U.S.C.
§ 1516a(c)(2) explicitly grants the trial court with authority to "enjoin the
liquidation of some or all entries of merchandise" – however, the injunction is not
automatic but "upon a request by an interested party for such relief and a proper
showing that the requested relief should be granted under the circumstances."
Although there is no analogous provision in the EAPA statute, the trial court has
the power to issue such an injunction as the court has all powers in law and equity.
*See* 28 U.S.C. § 1585.

And in any event, Plaintiffs-Appellants' discussion of measures to prevent liquidation during litigation is irrelevant to the facts here. CBP liquidated GLōB's entries *before* GLōB commenced this action. Therefore, the appropriate avenue for GLōB to prevent the liquidations from becoming final was to protest the liquidations, and if necessary, to commence an action in the trial court under 19 U.S.C. §1514 and 28 U.S.C. § 1581(a).

In sum, the trial court correctly determined that it lacked jurisdiction over GLōB's claims: CBP erroneously liquidated the entries, and because GLōB did not perfect an appeal concerning those liquidations at the trial court, the liquidations became "final and conclusive" pursuant to 19 U.S.C. § 1514(a).

**II.    <u>The Trial Court's Judgment On The Merits Should Be Affirmed Because CBP Did Not Abuse Its Discretion And Acted In Accordance With Law In Making Its Evasion Determinations</u>**

In CBP's Initial Determination, it concluded that the three elements of an affirmative EAPA evasion determination had been met, namely the investigated companies (1) entered covered merchandise (2) into the United Sates by means of material and false statement or omission, (3) and that this evasion resulted in applicable antidumping duties or other securities not being applied to the merchandise. *See* APPX00153. In its administrative review of the Initial Determination, CBP's Office of Regulations and Rulings concurred with these determinations. APPX00281.

Plaintiffs-Appellants challenge CBP's determinations on two of these findings, that the entries contained "covered merchandise" and that Plaintiffs-Appellants had avoided applicable antidumping duties. Plaintiffs-Appellants do not appear to contest the finding that the relevant entry paperwork contained a material false statement, namely in identifying the merchandise as originating in India when in fact the merchandise was produced in China.[9] As the trial court determined, both of Plaintiffs-Appellants' challenges lack merit.

## A. The Trial Court Correctly Sustained CBP's Determination That The Entries Contained "Covered Merchandise"

Plaintiffs-Appellants argue that the trial court erred in concluding that CBP's determination that the entries at issue contained "covered merchandise" was in accordance with law and was not an abuse of discretion. *See* Blue Br. 28. Plaintiffs-Appellants' argument is based on their claim that "CP Kelco stated on several occasions that it does not consistently supply the market in the United States with oilfield xanthan produced in the United States" and therefore, that "it is

---

[9] CBP rejected arguments advanced by Plaintiffs-Appellants that the misidentification of its entries was a clerical error. *See* APPX00188-89 n.18, APPX00195 n.45, APPX00198 n.53, APPX00200 n.60. CBP found it evident that the importers intended to report the entries as being free from antidumping duties and were of Indian origin, and so there is no basis for concluding these were clerical errors. *Id.* However, Plaintiffs-Appellants do not challenge that conclusion in this litigation, nor did they contest that the entry paperwork was in fact erroneous.

41

possible or even likely that CP Kelco is not subject to material injury by oilfield

xanthan produced in China[.]"[10]  Blue Br. 28.  Plaintiffs-Appellants argue that CBP

"was required to refer the matter" to Commerce pursuant to 19 U.S.C.

§ 1517(b)(4)(A) because "the evidence was reasonable that CP Kelco would not be

injured by a modified order . . . ."  Blue Br. 29.  The trial court correctly rejected

this argument.  *See* APPX00019-00021.

Plaintiffs-Appellants' citation of 19 U.S.C. § 1517(b)(4)(A) does not support

its position that CBP was required to consider changes in the domestic xanthan

gum industry, nor does it support Plaintiffs-Appellants' position that CBP was

required to make a referral to Customs.  The statute provides:

> If the Commissioner receives an allegation under paragraph (2) and is
> unable to determine whether the merchandise at issue is covered
> merchandise, the Commissioner shall—
>
> > (i) refer the matter to the administering authority to determine
> > whether the merchandise is covered merchandise pursuant to the
> > authority of the administering authority under subtitle IV; and
>
> > (ii) notify the party that filed the allegation, and any other
> > interested party participating in the investigation, of the referral.

---

[10] Despite the ambiguity in Plaintiffs-Appellants' brief, the quote "it is possible or
even likely that CP Kelco is not subject to material injury by oilfield xanthan
produced in China from its corporate strategy shift" is their own characterization of
the impact of this email, not a statement by CP Kelco that it believes the Order
should be revoked.

19 U.S.C. § 1517(b)(4)(A) (emphasis added).  Another subsection, 19 U.S.C. § 1517(b)(4)(C), provides that "[t]he period required for any referral and determination under this paragraph shall not be counted in calculating" the deadlines for EAPA's evasion determination.

The process described in 19 U.S.C. § 1517(b)(4) is an avenue available to CBP where it "is unable to determine whether the merchandise at issue is covered merchandise[.]"  19 U.S.C. § 1517(b)(4)(A).  In this case, however, there is no basis for asserting that CBP was unable to determine that the merchandise at issue was "covered merchandise" within the meaning of the EAPA statute.  The statute defines "covered merchandise" as "merchandise that is subject to— (A) an antidumping duty order issued under section 1673e of this title; or (B) a countervailing duty order issued under section 1671e of this title."  19 U.S.C. § 1517(a)(3).  Here, CBP was able to determine that the merchandise at issue was "covered merchandise" because it is subject to the AD Order on xanthan gum from China.  *See* APPX00187; APPX00194; APPX00196; APPX00198; *see also* APPX00265-0266 (CBP's administrative review).  Indeed, the trial court stated that Plaintiffs-Appellants had "themselves argue[d] that the merchandise should not have been covered merchandise given changed circumstances, not that it was not covered merchandise under the AD Order in its current form."  *See* APPX0021 (emphasis in original).

Plaintiffs-Appellants' assertion that CBP's decision not to make a referral to Commerce interfered with the importers' due process rights lacks merit. *See* Blue Br. 30-31. The trade statute governing the antidumping duty order, 19 U.S.C. § 1675 provides, in relevant part, that the International Trade Commission or Commerce can initiate a changed circumstances review when either entity "receives information concerning, or a request from an interested party for a review of . . . a final affirmative determination that resulted in an antidumping duty order[.]" *See* 19 U.S.C. § 1675 (b)(1)(A). In other words, any "interested party"[11] can request an administrative review if they thought appropriate based on changes in supply in the domestic market. Given the availability of this avenue to importers who qualify as interested parties, an importer subject to an EAPA investigation could have pursued this statutory remedy if it believed that grounds existed for revoking the AD Order, in whole or in part.

Finally, Plaintiffs-Appellants' argument that CBP "failed to consider an 'important aspect' of the matter" because CBP did not address information concerning CP Kelco's willingness to supply the U.S. market is inaccurate. Blue Br. 28. CBP did address this information in its *de novo* administrative review,

---

[11] The term "interested party" is defined in 19 U.S.C. § 1677(9)(A) to include "a foreign manufacturer, producer, or exporter, or the United States importer, of subject merchandise or a trade or business association a majority of the members of which are producers, exporters, or importers of such merchandise[.]"

stating that the information concerning CP Kelco's willingness to supply the U.S. market was not relevant to the "narrow" question in an EAPA proceeding— whether merchandise subject to an AD Order was "entered by means of a material falsehood or omission resulting in the non-payment or reduction of AD duties." APPX00279.  CBP further stated "[w]hether there may be a change in circumstances affecting the domestic industry such that the Order's scope may be modified by Commerce at a later date does not change the fact that, at the time of entry, the xantham [*sic*] gum was covered merchandise."  APPX00280.  Likewise, the trial court properly concluded that the questions raised concerning whether CP Kelco was being injured by reason of imports of xanthan gum from China has no bearing on CBP's determination pursuant to EAPA.  APPX0002s1.

Plaintiffs-Appellants also raise several arguments that either Commerce or the ITC could have initiated a changed circumstances review pursuant to 19 U.S.C. § 1675 in response to the information raised by the importers concerning the alleged changes in the domestic supply for xanthan gum.  Blue Br. 34-36.  These arguments are irrelevant because, as described herein, CBP was able to determine "whether the merchandise at issue is covered merchandise" and therefore, no referral under 19 U.S.C. § 1517(b)(4)(A) was necessary.

In sum, Plaintiffs-Appellants' arguments that CBP ignored pertinent information that the xanthan gum they imported from China was not causing

material injury in the United States lacks merit.  There is no obligation imposed on CBP under 19 U.S.C. § 1517(b)(4)(A) to refer a question to Commerce where CBP determined that the merchandise is "covered merchandise" under the relevant antidumping order.  Plaintiffs-Appellants avoid discussing whether the merchandise at issue was "covered merchandise" within the meaning 19 U.S.C. § 1517(a)(3), as there is no dispute that the merchandise is subject to the AD Order.  As such, CBP did not abuse its discretion or act in a manner inconsistent with law in not referring a question as to whether the merchandise at issue was "covered merchandise[.]"

## B. The Trial Court Correctly Sustained CBP's Determination That The Importers Had Avoided Applicable Antidumping Duties

In its Initial Determination, CBP found that the alleged manufacturers had not cooperated to the best of their abilities, stating that "the claimed manufacturers either did not respond to CBP's [Requests for Information], or failed to provide most of the information requested in the [Request for Information]."  APPX00200.  As a result, CBP determined it would "apply adverse inferences and infer that the claimed foreign manufacturers did not manufacture the imported xanthan gum[.]"  *Id.*  The trial court correctly held that CBP's application of an adverse inference, when selecting from the facts available, was consistent with 19 U.S.C. § 1517(c).

19 U.S.C. § 1517(c)(2) provides that CBP may collect "information as is necessary to make the determination through such methods as the Commissioner

considers appropriate, including by" issuing questionnaires to the party who filed

the allegation, the importers under investigation, a foreign producer or exporter, or

the government from which the merchandise has been exported. *Id.* If CBP finds

that a party making the allegation, an importer, or an exporter or producer of

relevant merchandise "has failed to cooperate by not acting to the best of the party

or person's ability to comply with a request for information[,]" CBP may "use an

inference that is adverse to the interests of that party or person in selecting from

among the facts otherwise available to make the determination." 19 U.S.C.

§ 1517(c)(3)(A)). The statute instructs that CBP may apply such an adverse

inference to an importer or foreign producer or exporter "without regard to whether

another person involved in the same transaction or transactions under examination

has provided the information sought.'" 19 U.S.C. § 1517(c)(3)(B)).

CBP did not abuse its discretion and acted in accordance with law in finding

that the importers under investigation and the purported manufacturers had not

cooperated with the investigation to the best of their abilities. In February 2019,

CBP requested that the importers provide additional information, seeking, among

other information, the "[r]ecords from the India factory demonstrating that raw

materials were obtained by the factory and were available for production[,]"

"production records for products assembled[,]" and "[a]ny other documents you

can provide that may substantiate origin[.]" *See* APPX00340; *see also*

APPX00185 n.5.  Once its investigation was underway, in August 2019, CBP

issued Requests for Information to the importers asking them to "[i]dentify all

suppliers, contractors, subcontractors, lenders, exporters, distributors, resellers, and

other persons involved in the development, production, sale, and/or distribution of

the merchandise under investigation . . . ."  APPX00413.  GLōB, Ascension,

UMD, and Crude all provided responses indicating that they imported the

merchandise from a common supplier in India, Chem Fert.  *See* APPX00185-

00186; *see also* APPX00051-00058 (Ascension); APPX00062-00076 (Crude);

APPX00078-00089 (GLōB); APPX00091-00093 (UMD).  On August 20, 2019,

CBP also sent requests for information to Chem Fert, who responded on

September 3, 2019.  *See* APPX00186; *see also* APPX00523-00528 (Chem Fert

response).  In that response, Chem Fert stated:

> [A]t the outset, we would like to submit that we are not
> manufacturer of Xanthan Gum in the sense we do not
> have entire facility to manufacture the product starting
> from the stage of raw material which is been aware by all
> our clients.  We import this product into India and then
> repack the same.  After repacking, it is exported out of
> India.

APPX00526.  Chem Fert then provided a list of the weights of "consignments" of

xanthan gum that it had provided to UMD, Ascension, Crude, and GLōB.[12]

---

[12] Chem Fert appears to have misspelled GLōB as Globe Energy Corporation.
APPX00527.

APPX00526-00527.  Chem Fert added that the companies it identified "knew this fact very well" and "had approached us and had asked us to import this product from China and thereafter repack it into India and export it to United States.'" APPX00527.  Chem Fert again reiterated, "we do not have a facility to manufacture Xanthan Gum starting from the stage of raw material[.]" APPX00527.  Neither Chem Fert, nor the importers, ultimately provided reliable information concerning who manufactured the merchandise at issue.

Because of this limited information, CBP determined that the record lacked information concerning the country of origin for the relevant merchandise, and who manufactured the merchandise.  *See* APPX00187 ("Neither Chem Fert nor [Ascension] provided requested production documentation related to the actual xanthan gum imported into the United States that could have enabled CBP to determine the country of origin."); *see also* APPX00194 (UMD); APPX00196 (Crude); APPX00198 (GLōB).

Plaintiffs-Appellants argue that the trial court erred in concluding that CBP did not abuse its discretion by applying adverse inferences, asserting that they "cooperated with all of CBP's requests of information" and produced the records they had available while undergoing efforts to collect information about the manufacturer of the imported goods by initiating litigation in India.  Blue Br. 44-45.  As an initial matter, these arguments miss the mark because 19 U.S.C.

§ 1517(c)(3)(B) permits CBP to apply adverse inferences concerning the manufactures of the xanthan gum at issue regardless of whether the importers investigated cooperated with the investigation.  It is undisputable that the alleged manufacturer, Chem Fert, did not provide the information requested concerning the manufacturing of the merchandise at issue, for example, production records.  Moreover, Plaintiffs-Appellants do not appear to dispute that the administrative record before CBP contained limited information concerning who actually produced the merchandise in the entries at issue.  Plaintiffs-Appellants point to no reliable contrary information confirming the actual manufacturer of the merchandise they imported into the United States.

Plaintiffs-Appellants' arguments also ignore their own lack of record-keeping and diligence concerning collection of information on the production of its imported merchandise.  In response to requests from CBP, Plaintiffs-Appellants were unable to provide basic documentation concerning production of its imported merchandise—documentation establishing the origin of xanthan gum imported into the United States.  APPX00187 (Ascension); APPX00194 (UMD); APPX00196 (Crude); APPX00198 (GLōB).  Although no specific provision of the EAPA statute identifies records that an importer is required to maintain, the statute does provide that CBP has the authority to collect "such additional information as is necessary to make the determination through such methods as the Commissioner

considers appropriate." 19 U.S.C. § 1517(c)(2). In addition, the law generally places burdens on importers to maintain documentation. *See* 19 U.S.C. § 1484(a)(1)(B)(i)-(iii) (requiring an "importer of record" to furnish CBP with "such other documentation" necessary for CBP to, among other things, "properly assess duties on the merchandise[,]" and "determine whether any other applicable requirement of law . . . is met"); 19 U.S.C. § 1508(a) (requiring importers to maintain, keep, and render for examination records related to import activity); 19 U.S.C. § 1509(a) (requiring importers to produce entry records when requested by CBP); 19 U.S.C. § 1509(g) (providing that importers who do not comply with recordkeeping and production requirements may be subject to penalties).

Plaintiffs-Appellants emphasize their efforts in India to obtain documentation, asserting that they "notified CBP five times that the parties had launched legal action in India to obtain documentation pertaining to the true manufacturer and exporter of the merchandise." Blue Br. 43. However, absent from Plaintiffs-Appellants' argument is an explanation of what CBP should have done with this information. *Id.* Plaintiffs-Appellants insinuate that CBP could have eliminated the gap in the administrative record by permitting the legal proceedings in India to conclude before reaching its final determination. This argument is without support. Plaintiffs-Appellants cite no legal authority for the proposition that an EAPA investigation should be extended if a party must take

legal action to obtain documents that should already be in their possession: those establishing where and by whom the imported merchandise was produced. Indeed, the statute would not permit such a pause, since it requires CBP to issue a final determination "not later than 300 calendar days after the date on which the Commissioner initiates an investigation." 19 U.S.C. § 1517(c)(1)(A).

Plaintiffs-Appellants also assert, without elaboration, that they "kept complete records but w[ere] duped by the shipper[.]" Blue Br. 45. However, even if true, this would have no bearing on the appropriateness of applying adverse inferences. 19 U.S.C. § 1517(c) specifies no requirement that CBP reach a finding that an importer intentionally lied about information as a prerequisite to applying adverse inferences. All that is required under the statute is a finding that a party making the allegation, the importer, or the producer "failed to cooperate by not acting to the best of the party or person's ability to comply with a request for information[.]" 19 U.S.C. § 1517(c)(3). As a result, CBP did not abuse its discretion and acted in accordance with law by applying adverse inferences.

Plaintiffs-Appellants cite this Court's decision in *Nippon Steel Corp. v. United States*, 337 F.3d 1373 (Fed. Cir. 2003), and the Court's instruction in that case that "[t]he mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination." *Nippon Steel*,

52

337 F.3d at 1381. *See* Blue Br. 42-43. To the extent Plaintiffs-Appellants are suggesting that *Nippon Steel* places a burden on CBP to affirmatively collect information when parties fail to develop a complete administrative record or fail to maintain adequate records, this argument is misplaced. Moreover, such a reading of the adverse inferences provision, 19 U.S.C. § 1517(c), would frustrate CBP's statutory directive to conduct investigations of evasion allegations. In addition, as described above, the administrative record in this case lacked information concerning who manufactured the xanthan gum in the entries at issue.

In addition, *Nippon Steel* concerns 19 U.S.C. § 1677e(b), which involves the application of adverse inferences in antidumping and countervailing duty proceedings before Commerce, whereas the application of adverse inferences in EAPA proceedings is governed by 19 U.S.C. § 1517(c)(3). 19 U.S.C. § 1517(c) is structured differently from 19 U.S.C. § 1677e(b), notably permitting the application of adverse inferences "with respect to" a party making an allegation, an importer, or an exporter or producer, "without regard to whether another person involved in the same transaction or transactions under examination has provided the information sought by the Commissioner, such as import or export documentation." 19 U.S.C. § 1517(c)(3)(B).

Additionally, even if the Court was to consider the application of adverse inferences in antidumping and countervailing duty proceedings for guidance, this

Court's decision in *Nippon Steel* in fact supports CBP's application of adverse

inferences in this case. In *Nippon Steel Corp*, this Court explained that the "best of

its ability" standard applicable to antidumping and countervailing duty proceedings

"does not condone inattentiveness, carelessness, or inadequate record keeping."

*Id.* at 1382. The Court held that the "best of its ability" standard "assumes that

importers are familiar with the rules and regulations that apply to the import

activities undertaken and requires that importers . . . take reasonable steps to keep

and maintain full and complete records documenting the information that a

reasonable importer should anticipate being called upon to produce . . . ." *Id.*

Here, Plaintiffs-Appellants did not "take reasonable steps to keep and maintain full

and complete records" related to the merchandise at issue. *See Nippon Steel*, 337

F.3d at 1382. In another case concerning the application of adverse inferences

pursuant to 19 U.S.C. § 1677e in antidumping and countervailing duty

proceedings, this Court has held that application of adverse inferences pursuant to

19 U.S.C. § 1677e is "appropriate to fill gaps when Commerce must rely on other

sources of information to complete the factual record." *Zhejiang DunAn Hetian

Metal Co. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011). Here, it is

undisputed that there is lack of record information concerning who manufactured

the merchandise at issue. As such, this Court's precedents from the antidumping

and countervailing duty context suggest that CBP's application of adverse

inferences in this case is entirely appropriate given the lack of record information

concerning who manufactured the subject merchandise.

Finally, in determining that CBP did not abuse its discretion in applying

adverse inferences, the trial court correctly concluded that "CBP's inference that

the xanthan gum was produced in China rather than India is independently

supported by the record." APPX0023. The trial court noted that CBP's

administrative review determination had not relied on adverse inferences, but

instead on factual information such as Chem Fert's statements to CBP that it does

not manufacture the merchandise at issue but instead 'imports the xanthan gum

into India and then repacks [it]' for export" and that Plaintiffs-Appellants "'knew

this fact very well'" and had expressly requested that Chem Fert "'import [xanthan

gum] from China and thereafter repack it into India and export it to the United

States.'" APPX0023 (citing APPX00277); *see also* APPX00527 (Chem Fert

Chems. Resp.)).

As such, the trial court properly found that even without reliance on adverse

inferences, CBP nevertheless "examined 'the relevant data' and articulated 'a

satisfactory explanation' for [its] decision' in relying on the record evidence to

conclude that the Subject Entries consisted of xanthan gum from PRC."

APPX0024 (citing *Dep't of Com. v. New York*,__ U.S.__, 139 S. Ct. 2551, 2569,

204 L.Ed.2d 978 (2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State*

*Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  This holding should be affirmed because CBP acted in accordance with the legal requirements of the EAPA statute and also offered an independent determination of evasion even absent the application of adverse inferences.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court affirm the trial court's judgment.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

PATRICIA M. McCARTHY
Director

/s/ Justin R. Miller
JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

*Of Counsel*:

Shae Weathersbee
Office of Assistant Chief Counsel
U.S. Customs and Border Protection

/s/ Elisa S. Solomon
ELISA S. SOLOMON
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-0583

*Attorneys for Defendant-Appellee*

Dated:  June 5, 2023
    New York, New York

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 5, 2023, I filed a copy of the foregoing Brief of Defendant-Appellee United States in Appeal No. 23-1078 electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Elisa S. Solomon

Dated:  June 5, 2023
        New York, New York

**CERTIFICATE OF COMPLIANCE PURSUANT TO**
**FEDERAL CIRCUIT RULE 32(b)(3)**

I, Elisa S. Solomon, a trial attorney in the Office of the Assistant Attorney

General, Civil Division, Commercial Litigation Branch, International Trade Field

Office, who is responsible for the foregoing brief, relying upon the word count

feature of Microsoft Word, the word processing program used to prepare the brief,

certify that this brief complies with the type-volume limitation under Fed. R. App.

P. 32(a)(7)(B), and contains 12,870 words.


/s/ Elisa S. Solomon